# IN THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Crim. ID Nos. 2106007754 and |
| | ) | 2106007765 |
| JEREMIAH BROOKS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Submitted: February 16, 2022
Decided: February 21, 2022

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**GRANTED.**

Karin M. Volker, Esquire, and Matthew F. Hicks, Esquire Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorney for State*.

Kimberly A. Price, Esquire, Collins & Price, Wilmington, Delaware. *Attorney for Defendant*.

**MEDINILLA, J.**

## I.    INTRODUCTION

At fifteen years of age,[1] it is alleged that Defendant Jeremiah Brooks ("Defendant") acted with another to commit various criminal offenses in the summer of 2021.  He stands accused of Robbery First Degree, Conspiracy Second Degree,[2] Assault First Degree, Possession of a Firearm During Commission of a Felony ("PFDCF"), Attempted Robbery First Degree, Possession or Control of a Firearm by a Person Prohibited ("PCFPP"), and Conspiracy Second Degree.[3]  He seeks to transfer his charges to Family Court under 10 *Del. C.* § 1011.  A reverse amenability hearing was held on February 16, 2022.  Upon consideration of the parties' submissions, oral argument, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

## II.    FACTUAL AND PROCEDURAL HISTORY[4]

The State proceeds against this juvenile under an accomplice liability theory. Defendant was indicted for two sets of charges that include a robbery on May 6 and an attempted robbery and assault that occurred on June 9 of 2021.

Defendant was fifteen at the time and his co-defendant was eighteen. Both sets of charges are discussed separately.

---

[1] Defendant's date of birth is October 17, 2005.
[2] Crim. ID. No. 2106007754, Indictment, True Bill No. 22, D.I. 2.
[3] Crim. ID. No. 2106007765, Indictment, True Bill No. 4, D.I. 2
[4] This recitation is based upon oral arguments and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on February 16, 2022.

*May 6, 2021 Robbery*[5]

At the reverse amenability hearing, the State presented the testimony of Corporal John O'Connor ("Detective O'Connor") of the Wilmington Police Department (WPD) regarding a robbery that took place on May 6th at the intersection of East 9th and North Lombard Street in Wilmington.

The victim reported that she and her son contacted an individual named Benji via Instagram to sell an Apple iPhone. The victim arrived alone to meet Benji who was waiting with an unknown individual. The victim stated that Benji said he needed to get money and asked her to follow them to a nearby residence. The victim followed both individuals who subsequently proceeded to enter a residence while she waited outside. When they returned, the individual known as Benji took the cell phone from the victim and then lifted his shirt, revealing a black firearm in the front waistband of his pants. While fleeing, Benji turned back to the victim, pointed his hand at her as if holding a gun, and made a shooting noise at her. No evidence was presented about whether Defendant made any comments, gestures, or had any communication with the victim at the time of the robbery.

Through WPD's investigation, Detective O'Connor discovered Instagram photographs of both individuals with usernames "yaabOybenji" and "bckblockjb." The latter Instagram account belonged to Defendant. It was unclear if both

---

[5] Crim. ID. No. 2106007754.

Instagram accounts were used to communicate with the victim. Additional investigation confirmed that Defendant was on probation at the time of the robbery with GPS coordinates that placed him in the immediate vicinity.

A photograph lineup was created and administered by Detective O'Connor. The victim positively identified Defendant as the individual who was present with Benji and identified Benji as co-defendant Na-zer Hayman-Cooper ("Cooper"). The victim confirmed that it was Cooper and not Defendant who possessed the firearm.

### *June 9, 2021 Assault and Attempted Robbery*[6]

The State presented the testimony of Detective Anthony Ford ("Detective Ford") regarding a shooting incident that took place on June 9th near the 200 block of Garden Court in Wilmington. Due to the medical status of the victim, Detective Ford was initially unable to interview him.

Instead, he interviewed a witness who was sitting in a vehicle with the victim at the time of the shooting. The witness stated that two individuals approached the vehicle and brandished a handgun while demanding property. When the driver tried to drive away, an individual fired a gunshot into the vehicle and struck the victim on his side. This witness was reinterviewed on a later date and further told the officer that contact with the suspects was initiated to effectuate a marijuana drug deal. He

---

[6] Crim. ID. No. 2106007765.

provided Instagram usernames belonging to Defendant and Cooper. GPS locations for both individuals confirmed they were in the location at the time of the shooting.

Detective Ford presented a photo pack array to the same witness who positively identified Defendant as one of the two suspects. The witness believed that it was Cooper who possessed the firearm and shot the victim but was not entirely sure and that the individual without the gun was more verbal about demanding property. The victim also positively identified Defendant from a photo pack array.

Defendant was indicted by the Grand Jury on September 13, 2021. Defendant filed a Motion to Transfer on October 1, 2021. The Court held a reverse amenability hearing on February 16, 2022.[7]

## III.  STANDARD OF REVIEW

The reverse amenability process is meant to identify juveniles charged as adults who are amenable to the rehabilitative process of the Family Court.[8] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[9]

---

[7] The Court provided dates in December 2021 but due to scheduling conflicts, the reverse amenability was scheduled for January 18, 2022. On January 17, 2022, the Court was advised that the hearing would need to be rescheduled again because the State's CIO was unable to attend due to illness.

[8] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[9] *See* 10 *Del. C.* § 1011(b) (establishing the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response

## IV. DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the § 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile."[10] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[12]

Though Defendant's Instagram account may not have been used in both cases, the State established that Defendant was at the scene via GPS location and through the positive identification by both victims and a witness. The State does not allege that Defendant possessed the firearm on either occasion but proceeding on an accomplice liability theory, the Court finds that the State has made out its *prima facie* case against Defendant on all the charges.

---

thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"and (4) "such other factors which, in the judgment of the Court are deemed relevant."); *see also State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Mar. 31, 2014) (discussing the § 1011(b) factors).

[10] *Harper*, 2014 WL 1303012, at *5 (citing *Marine*, 624 A.2d at 1185).

[11] *Id.*

[12] *Id.*

**Weighing § 1011(b)'s Four Factors**

### 1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two pronged.[13] The nature of the present offenses are serious in nature and weigh against transfer. Although perhaps Defendant played a less significant role than his co-defendant as alleged, the Court is troubled by the alleged reckless criminal conduct that terrified one victim and left another paralyzed. Defendant has only a limited adjudicatory history to include an initial 2019 adjudication for two counts of Conspiracy Third Degree and Theft Under $1,500 and a sole felony adjudication in 2021 for Conspiracy Second Degree. But due to the escalation of violence, this factor weighs against transfer.

### 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

This factor weighs in favor of transfer to Family Court. Defendant's involvement with YRS began when he was thirteen years old. Testifying on behalf of the State, YRS probation officer and Senior Family Services Specialist, Gabrielle Casarino ("PO Casarino") recommends he be found non-amenable due to increased levels of violence. Yet she testified that for the two years and five months that YRS has worked with him, Defendant responded reasonably well after placements at

---

[13] *See* 10 *Del. C.* § 1011(b)(1).

7

VisionQuest RAD ("RAD") in 2019 and 2020. Defendant was also involved with Wraparound Delaware where he completed the program.

PO Casarino testified that Defendant has responded favorably while in pre-trial detention. At Stevenson House Detention Center ("SHDC") in December 2020, there were no reported behavioral issues. During his detention from June 2021 until his release at the New Castle County Detention Center ("NCCDC") he did extremely well and obtained the highest behavioral rank known as "gold shirt" status. Finally, she testified that Defendant has not been provided with age-appropriate services through Level IV or V at YRS targeted to address Defendant's issues. Depending on the level of supervision, she said these services could be provided for another three to five years.

Laura Cooney-Koss, Psy. D. testified that this timeframe would be sufficient to address Defendant's rehabilitative needs. In her twenty-page report and for reasons more fully stated on the record, she opines that Defendant is amenable to the services of Family Court.[14] She testified that Defendant has a low risk for dangerousness, is receptive to treatment, and with appropriate treatment, his risk for recidivism is low. The Court accepts Dr. Cooney-Koss's unrefuted clinical findings that Defendant is amenable to the services in YRS.

---

[14] *See* Psychological Evaluation by Laura Cooney-Koss, Psy.D., at 19–20 (Jan. 4, 2022).

The Court also agrees with Dr. Cooney-Koss that pivotal to Defendant's treatment response is his mother. She has displayed a level of investment and dedication generally not seen in parents presented with similar situations. She works seven days a week and holds two jobs. As a result, she has been able to move out of the family's former environment and has already helped Defendant begin his recommended treatment.

On cross-examination, though Dr. Cooney-Koss opines that community supervision is sufficient to rehabilitate Defendant, she agreed with the State that YRS Level IV and Level V placements can also provide therapeutic and behavioral services. She further opined that the adult correctional system cannot provide these services.

When asked if she was familiar with recent changes in the law that would allow youth convicted in Superior Court to remain in YRS,[15] she responded that she did not have an opinion on the law. No evidence was presented as to what impact the sentencing provisions under 11 *Del. C.* § 4204(A)(b) should have on this Court's determination on amenability. The question is whether he should be tried as an adult in the first instance not where he could serve out his sentence if convicted as an adult.

---

[15] *See* 11 *Del. C.* § 4204(A)(b) ("When a child who has not reached that child's eighteenth birthday is sentenced in Superior Court to a period of incarceration, such sentence shall initially be served in a juvenile facility. . . and such child shall remain in the custody of or be transferred forthwith to the Division of Youth Rehabilitative Services until the child's eighteenth birthday, at which time such child shall be transferred forthwith to the Department of Correction to serve the remaining portion of said sentence.").

### 3. Section 1011(b) Factor Three: Interest of Society and Defendant

Defendant was only fifteen years old when the alleged incidents occurred. Residential services, if needed, are available through the Family Court until the day before Defendant's nineteenth birthday, and community supervision to age twenty-one. Since Defendant has not been afforded such treatment options, it is in both society and Defendant's interest to let the juvenile justice system implement its programs. Thus, this factor weighs in favor of transfer.[16]

### CONCLUSION

Under § 1011(b), the Court finds that the factors weigh in favor of transfer. For the reasons stated above, Defendant's Motion to Transfer Charges to Family Court is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Vivian Medinilla
Judge Vivian L. Medinilla

---

[16] The fourth factor of § 1011(b) – other factors the Court deems relevant – has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in this ruling.